IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID G. LEWIS,<br><br>    Plaintiff,<br><br>  v.<br><br>CRAIG FRANKLIN et al.,<br><br>    Defendants.<br>_____ / | No. C-03-0359 MMC<br><br>**ORDER GRANTING CRAIG FRANKLIN'S AND JOSE REYNOSO'S MOTION FOR SUMMARY JUDGMENT; GRANTING STANLEY WALKER'S MOTION FOR SUMMARY JUDGMENT; VACATING HEARING**<br><br>(Docket Nos. 81, 91) |

    Before the Court are two motions for summary judgment: (1) a motion filed November 30, 2006 by defendants Craig Franklin ("Franklin") and Jose Reynoso ("Reynoso"), and (2) a motion filed December 1, 2006 by defendant Stanley Walker ("Walker"). Plaintiff David G. Lewis ("Lewis") has filed a consolidated opposition, to which separate replies have been filed. Having considered the papers filed in support of and in opposition to the motions, the Court finds the matter appropriate for decision without oral argument, see Civil L.R. 7-1(b), hereby VACATES the January 5, 2007 hearing, and rules as follows.

## BACKGROUND

    The instant action arises out of an asserted conspiracy to persuade a witness to give false testimony at Lewis's criminal trial, which act assertedly caused Lewis's wrongful conviction.

1    On June 20, 1994, Lewis, while employed by the California Department of Corrections ("CDC") at Pelican Bay State Prison ("Pelican Bay"), shot and wounded inmate Harry Long ("Long") while Long was engaged in an altercation with another inmate, Tommy Willis ("Willis"). (See Lewis Decl. ¶ 2; see also U.S. v. Lewis, 368 F.3d 1102, 1104 (9th Cir. 2004). On August 2, 1994, the California Department of Corrections ("CDC") Shooting Review Board issued a report, concluding that Lewis acted within departmental policy and that the shooting was justifiable. (See Reynoso Decl. Ex. A. at AGO-0874, AGO-0875.)

In the late 1990s, a federal investigation was launched to investigate officer misconduct at Pelican Bay, including the above-referenced shooting incident involving Lewis and Long. (See Donald Decl. Ex. F (Walker Dep.) at 45:4-46:23, 54:9-55:12, 60:15-61:4.) Walker, an FBI special agent, participated in the investigation. (See id. at 46:6-18, 54:14-.55:24; Saltiel Reply Decl. Ex. 2 (Walker Decl.) ¶ 1.) Franklin, a CDC internal affairs officer, and Reynoso, a CDC investigator, were assigned to assist in the investigation. (See Donald Decl. Ex. G (Franklin Dep.) at 62:14-6, 68:7-13, 117:8-15; Ex. H (Reynoso Dep.) at 70:2-71:12; Reynoso Decl. ¶ 2.) The results of the investigation were presented to a prosecutor who authorized further investigation of the Lewis shooting incident. (See Donald Decl. Ex. G (Franklin Dep.) at 127:18-128:8.)

Thereafter, in 1999, Lewis was indicted on two counts arising out of the shooting of Long: deprivation of rights under color of law, in violation of 18 U.S.C. § 242, and use of a firearm in relation to a crime of violence, in violation of 18 U.S.C. § 924(c). See United States v. Lewis, 368 F.3d at 1104. At trial, Long was asked if he recalled seeing whether Willis had a weapon at the time of the shooting, and Long responded, "No, I did not." (See Request For Judicial Notice ("RJN") Ex. A at 275:2-3.) On cross-examination, Long testified that although he had stated on direct examination that Willis did not have a weapon, he "didn't know for sure if he had a weapon" because he "didn't know if there wasn't one in his pocket[.]" (See id. at 292:5-19.) Long then was asked if he had told CDC investigators that Willis had attacked him "with a razor and that there was blood all over the place"; Long responded that he "never said it[.]" (See id. at 292:20-293:5.)

2

1    On February 14, 2000, a jury convicted Lewis on both counts. (See RJN Ex. B
2 (CR-99-0186 docket) at Docket No. 83-84.)  In 2002, after Lewis had been incarcerated for
3 fifteen months, (see Lewis Decl. ¶ 3), Lewis's conviction was overturned on appeal, see
4 United States v. Lewis, 27 Fed. Appx. 768 (9th Cir. 2002).  A new trial was conducted and
5 Lewis was acquitted on both counts. (See RJN Ex. B (CR-99-0186 docket) at Docket No.
6 363.)

7    In July 1998, Long filed a civil rights lawsuit against Lewis and other CDC personnel,
8 seeking damages as a result of the shooting. (See RJN Ex. E (First Amended Complaint in
9 Long v. Gomez, C-98-2679); see also C-98-2679, Docket No. 1.)  In that action, Long
10 alleged that the fight between himself and Willis "did not involve the use of any weapons."
11 (See RJN Ex. E ¶ 15.)  On August 21, 2001, Long was deposed in connection with his civil
12 case, and testified that Walker or "the other guy" associated with the Lewis prosecution told
13 him to testify at trial that he could not remember whether Willis had a razor blade, stating
14 words to the effect of "If they ask you the question about the razor blade just tell them you
15 don't recall or you don't remember." (See Donald Decl. Ex. A at 165:4-21.)

16    On September 12, 2006, at his deposition in the instant action, Long testified that
17 during a meeting in the federal building with Walker, Franklin, Reynoso, and a United
18 States Attorney, he was told either by Walker or the attorney: "You don't have to say
19 anything about that razor." (See Donald Decl. Ex. I (Long Dep.) at 37:17-38:17, 53:1-8.)
20 Long further testified, "I believe the reason why they told me that is because he said, if you
21 say something about the razor, then the attorneys for Mr. Lewis could say, well, maybe I
22 did see something [sic] shiny object or something and that's why he shot." (See id. at
23 38:18-22.)

24    In his complaint, Lewis alleges that the above-referenced instructions were given to
25 Long by one or more of defendants Franklin, Reynoso, and Walker and that all defendants
26 acquiesced in the instructions. (See Compl. ¶ 14.)  Lewis further alleges that Long was
27 "wrongfully coerced and intimidated into concealing information and giving false testimony
28 due to the Defendants Franklin's and Reynoso's status as State Correctional Officers,

3

1 Defendant Walker's status as an agent of the [FBI], and Long's status as an inmate." (See
2 id. ¶ 15.) Additionally, Lewis alleges, Long's false testimony with respect to the lack of a
3 weapon "created a false impression with the jury in [Lewis's] criminal trial as to the nature
4 and extent of the altercation, . . . since it was [Lewis's] position that . . . Long appeared
5 enraged, out of control and intent on inflicting great bodily injury on the other inmate,
6 conduct that would have been consistent with . . . Long's observation of a razor blade in the
7 other Inmate's hand." (See Compl. ¶ 16.) Lewis alleges that Long's assertedly false
8 testimony resulted in Lewis's wrongful conviction and incarceration. (See id.)

9 Lewis asserts the following causes of action: (1) pursuant to 42 U.S.C. § 1983, a
10 claim that Franklin and Reynoso violated Lewis's rights to liberty and due process under
11 the Fifth and Fourteenth Amendments to the United States Constitution by coercing Long
12 into giving false testimony; (2) pursuant to 42 U.S.C. § 1983, a claim that Walker violated
13 Lewis's rights to liberty and due process under the Fifth and Fourteenth Amendments by
14 coercing Long into giving false testimony; (3) pursuant to 42 U.S.C. § 1985(2), a claim that
15 Franklin, Reynoso, and Walker conspired to coerce Long into giving false testimony,
16 thereby depriving Lewis of his rights to liberty and due process under the Fifth and
17 Fourteenth Amendments; (4) pursuant to 42 U.S.C. § 1986, a claim that Franklin, Reynoso
18 and Walker failed to prevent the above-referenced conspiracy; and (5) pursuant to state
19 law, a claim of intentional infliction of emotional distress against Franklin, Reynoso and
20 Walker based on all of the above allegations.

**LEGAL STANDARD**

22 Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment as
23 to "all or any part" of a claim "shall be rendered forthwith if the pleadings, depositions,
24 answers to interrogatories, and admissions on file, together with the affidavits, if any, show
25 that there is no genuine issue as to any material fact and that the moving party is entitled to
26 judgment as a matter of law." See Fed. R. Civ. P. 56(b), (c). Material facts are those that
27 may affect the outcome of the case. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242,
28 248 (1986). A dispute as to a material fact is "genuine" if the evidence is such that "a

1  reasonable jury could return a verdict for the nonmoving party." See id. The Court may not
2  weigh the evidence. See id. at 255. Rather, the nonmoving party's evidence must be
3  believed and "all justifiable inferences must be drawn in [the nonmovant's] favor." See
4  United Steelworkers of Am. v. Phelps Dodge Corp., 865 F.2d 1539, 1542 (9th Cir. 1989)
5  (en banc) (citing Liberty Lobby, 477 U.S. at 255).

6  　　　　The moving party bears the initial responsibility of informing the district court of the
7  basis for its motion and identifying those portions of the pleadings, depositions,
8  interrogatory answers, admissions and affidavits, if any, that it contends demonstrate the
9  absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317,
10 323 (1986). Where the nonmoving party will bear the burden of proof at trial, the moving
11 party's burden is discharged when it shows the court there is an absence of evidence to
12 support the nonmoving party's case. See id. at 325.

13 　　　　Where the moving party "bears the burden of proof at trial, he must come forward
14 with evidence which would entitle him to a directed verdict if the evidence went
15 uncontroverted at trial." See Houghton v. South, 965 F.2d 1532, 1536 (9th Cir. 1992)
16 (citations omitted); see also Fontenot v. Upjohn, 780 F.2d 1190, 1194 (5th Cir. 1986)
17 (holding when plaintiff moves for summary judgment on an issue upon which he bears the
18 burden of proof, "he must establish beyond peradventure all of the essential elements of
19 the claim . . . to warrant judgment in his favor.") (emphasis in original).

20 　　　　A party opposing a properly supported motion for summary judgment "may not rest
21 upon the mere allegations or denials of [that] party's pleading, but . . . must set forth
22 specific facts showing that there is a genuine issue for trial." See Fed. R. Civ. P. 56(e); see
23 also Liberty Lobby, 477 U.S. at 250. The opposing party need not show the issue will be
24 resolved conclusively in its favor. See Liberty Lobby, 477 U.S. at 248-49. All that is
25 necessary is submission of sufficient evidence to create a material factual dispute, thereby
26 requiring a jury or judge to resolve the parties' differing versions at trial. See id.
27
28

## DISCUSSION[1]

**A. Absolute Prosecutorial Immunity**

Defendants contend that even assuming, arguendo, they told Long not to testify that Willis had a razor blade, defendants nonetheless are entitled to absolute prosecutorial immunity for any acts taken in preparing a witness for trial.

In Imbler v. Pachtman, the United States Supreme Court affirmed dismissal of a § 1983 action against a state prosecuting attorney, wherein the plaintiff alleged the prosecutor intentionally allowed a witness to give false testimony during a criminal trial and was responsible for the suppression of other evidence at trial. See Imbler v. Pachtman, 424 U.S. 409, 410, 416 (1976). The Supreme Court held that "in initiating a prosecution and in presenting the State's case, the prosecutor is immune from a civil suit for damages under § 1983," see id. at 431, and, in particular, that a prosecutor's absolute immunity extends to claims of willful use of perjured testimony and willful suppression of exculpatory information, see id. n. 34; see also Burns v. Reed, 500 U.S. 478, 489-90, 492 (1991) (holding prosecutor absolutely immune from § 1983 damages suit based on presentation of "misleading" testimony at probable cause hearing for search warrant; noting "prosecutors and other lawyers were absolutely immune from damages liability at common law . . . for eliciting false and defamatory testimony from witnesses"); Cousin v. Small, 325 F.3d 627, 635 (5th Cir. 2003) (holding prosecutor entitled to absolute immunity from § 1983 suit based on allegation that prosecutor coached witness to testify falsely at criminal trial).[2]

A prosecutor is not subject to absolute immunity for every act he may commit,

---

[1] Lewis has submitted numerous objections to defendants' evidence. To the extent the Court has relied on any evidence to which Lewis has objected, the objection has been overruled.

[2] Absolute prosecutorial immunity also bars conspiracy claims, such as the instant claims asserted under § 1985 and § 1986. See, e.g., Pinaud v. County of Suffolk, 52 F.3d 1139, 1148 (2nd Cir. 1995) (internal quotation and citation omitted) ("[W]hen the underlying activity at issue is covered by absolute immunity, the plaintiff derives no benefit from alleging a conspiracy."); Snelling v. Westhoff, 972 F.2d 199, 200 (8th Cir. 1992) (dismissing, on the basis of absolute prosecutorial immunity, claims against prosecutor for conspiracy to present false testimony in violation of §§ 1983, 1985(2), and 1986).

6

however. "A prosecutor's administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings are not entitled to absolute immunity." See Buckley v. Fitzsimmons, 509 U.S. 259, 273-74 (1993) (holding prosecutor not protected by absolute immunity for fabrication of evidence during preliminary investigation of crime because "[a] prosecutor neither is, nor should consider himself to be, an advocate before he has probable cause to have anyone arrested."); see also Genzler v. Longanbach, 410 F.3d 630, 638-41 (9th Cir. 2005) (holding prosecutor and investigator not entitled to absolute immunity for encouraging witness, during meetings prior to bail hearing and more than month prior to preliminary hearing, to fabricate testimony). The Supreme Court has explained that although "[a]lmost any action by a prosecutor, including his or her direct participation in purely investigative activity, could be said to be in some way related to the ultimate decision whether to prosecute," the Court has "never indicated that absolute immunity is that expansive." See Burns, 500 U.S. at 493, 496 (holding prosecutor not entitled to absolute immunity for giving legal advice to police during investigative phase of criminal case). "[T]he official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question." See Burns, 500 U.S. at 486.

In determining whether a defendant is entitled to absolute immunity, courts must apply a "functional approach," which "looks to the nature of the function performed, not the identity of the actor who performed it." See Buckley, 509 U.S. at 269 (internal quotations and citations omitted). Consequently, absolute prosecutorial immunity has been extended to persons working with prosecutors, including investigators, when they perform functions that, if performed by a prosecutor, would entitle a prosecutor to absolute immunity. See, e.g., KRL v. Moore, 384 F.3d 1105, 1113 (9th Cir. 2004) (holding "an investigator gathering evidence, a month after an indictment is filed, to prepare the prosecutor for trial is engaged in an advocacy function intimately associated with the judicial process, and is entitled to the same immunity that would be afforded a prosecutor"). The relevant question is whether the defendants, at the time of the conduct in question, were "engaged in an advocacy-related

7

function intimately associated with the judicial phase of the criminal process . . . or whether they were engaged in police-type investigative work." See Genzler, 410 F.3d at 638 (internal quotation and citation omitted).

Here, all of the evidence relating to the asserted meeting at which one or more of the defendants purportedly coerced Long into giving false testimony demonstrates that the meeting in question was conducted with the prosecuting attorney immediately prior to, or during, Lewis's trial. In a declaration filed in 2003 in the Lewis criminal action, Walker attests that he was present during a witness preparation session with Long and Roy Austin ("Austin"),[3] which was held "[p]rior to trial" and "in the morning before court began" in "one of the Marshal's holding cells on the 20th floor of the Federal Building."[4] (See Saltiel Reply Decl. Ex. 2 (Walker Decl.) ¶ 4.) Walker attests that he heard Long ask Austin what he should say about a weapon if he was asked at trial, and that Austin told Long that he could say that he did not know. (See id. ¶ 6.) Walker's deposition testimony in the instant action is consistent with his prior declaration. (See Saltiel Decl. Ex. 8 (Walker Dep.) at 140:11-147:8.) Long likewise testified, at his September 12, 2006 deposition in the instant action, that the above-referenced meeting occurred in the federal building for the purpose of discussing his trial testimony.[5] (See Donald Decl. Ex. I (Long Dep.) at 37:25-38:25, 53:1-

---

[3] The record reflects that Austin was an Assistant United States Attorney who represented the government at Lewis's first criminal trial. (See, e.g., RJN Ex. A at 1.) Austin recalls meeting with Long before trial in preparation for Long's trial testimony, but has little recollection of the meeting. (See Saltiel Decl. Ex. 9 (Austin Dep.) at 37:8-13, 65:2-67:12.)

[4] Long was still serving his sentence at the time of trial, (see RJN Ex. A at 263:17-21), and was brought to court pursuant to a writ of habeas corpus ad testificandum.

[5] Long testified: "There was a meeting one time that took me out the federal building into the federal building holding cell into a conference room like this here, but it was littler one than this. And it was F.B.I. – Mr. Stan Walker – was sitting in front of me, Joe Reynoso standing right here (indicating), Craig Franklin was sitting over there, and the U.S. Department – the U.S. attorney that – that was fighting – fighting the case standing over there. [¶] And I told – and they said, 'Well, Mr. Long wants to know why are you not saying anything about this razor in this courtroom – going – in the courtroom.' [¶] And I believe – I don't remember it was Stan Walker or either the U.S. Department of Justice that – I guess it's the D.A., I guess. And they said, You don't have to say anything about that razor. . . . So they said don't say anything about the razor, don't want any – he says that no one ain't

5.) Long's August 21, 2001 deposition testimony in his civil case is consistent with the deposition testimony he gave in the instant case. (See Henderson Decl. Ex. 9 (Long Dep.) at 134:6-138:17, 166:5-16.)[6]

      Because the evidence is undisputed that the above-referenced meeting was conducted with the prosecuting United States Attorney to discuss Long's then-upcoming trial testimony, any attempt by defendants to influence Long's testimony was "relate[d] to an advocate's preparation for . . . judicial proceedings." See Buckley, 509 U.S. at 273; Imbler, 424 U.S. at 430 (holding allegation that prosecutor willfully used perjured testimony at trial was activity "intimately associated with the judicial phase of the criminal process" to which "the reasons for absolute immunity apply with full force"). Consequently, the Court finds Franklin, Reynoso, and Walker are entitled to absolute immunity from liability with respect to Lewis's federal causes of action. See id.; see also Cousin v. Small, 325 F.3d 627, 635 (5th Cir. 2003) (holding prosecutor entitled to absolute immunity from § 1983 suit based on allegation that prosecutor coached witness to testify falsely at criminal trial); KRL v. Moore, 384 F.3d at 1113 (holding investigator entitled to protection of absolute immunity for gathering evidence, after filing of indictment, to prepare prosecutor for trial).[7]

---

saying anything about it; so just leave it alone[.]" (See Donald Decl. Ex. I (Long Dep.) at 37:25-38:25.) Long further testified: "I believe what they told me was if Mr. Lewis' attorneys or anyone in that court asks you about the razor blade, tell them that there wasn't one or it didn't have anything to do with the incident, something to that effect." (See id. at 53:1-5.)

[6] Long testified: "Mr. Stan Walker, and the – I believe the prosecuting attorney told me the same thing: 'We are going to go in there. They are going to ask you a bunch of questions. Don't mention the razor blade.'" (See Henderson Decl. Ex. 9 (Long Dep.) at 134:22-25.) Long further testified: "The only thing the FBI attorneys and all them people, the Internal Affairs, everybody told me, 'Do not mention anything about the razor. If they ask you something like that – something like that, we don't need to bring it in right now,' or something. 'We'll bring it in later on down the line,' or something, he said. A lot of these things they asked me were not on the record. It was little rooms off to the side or something like that there." (See id. at 135:23-136:6.)

[7] Lewis contends Franklin, Reynoso and Walker are not entitled to prosecutorial immunity because they were not employed by the prosecutor. Lewis cites no authority holding an employment relationship with the prosecutor is a prerequisite to prosecutorial immunity, however. Indeed, as noted, the Supreme Court has held that in determining entitlement to immunity, the Court "looks to the nature of the function performed, not the identity of the actor who performed it." See Buckley, 509 U.S. at 269.

Accordingly, the Court will GRANT the motions for summary judgment with respect to the federal claims against Franklin, Reynoso, and Walker, on the ground they are entitled to absolute prosecutorial immunity.[8]

**B. Collateral Estoppel**

Defendants additionally argue that Lewis is collaterally estopped from arguing that defendants improperly coerced Long's trial testimony because Lewis litigated the issue during his criminal trial and the issue was decided against him.

On February 5, 2003, Lewis moved to dismiss the criminal charges against him on the ground that the government engaged in misconduct prior to and during his initial criminal trial by, inter alia, instructing Long to falsify his testimony. (See Saltiel Decl. Ex. 5 at 16-24.) In particular, Lewis argued that "[i]f Long is telling the truth – i.e., he saw Willis with a knife, he planned to reveal that on the stand, and the government ordered him not to – . . . the proper sanction is dismissal, for absent the government's misconduct, Lewis would have been acquitted at his first trial." (See id. at 17:24-18:1.) On April 9, 2003, the Court denied the motion. (See Saltiel Decl. Ex. 6.) Lewis filed an interlocutory appeal, and the Ninth Circuit affirmed, holding that the record did "not suggest prosecutorial misconduct, and Lewis [did] not merit relief on these grounds." See United States v. Lewis, 368 F.3d 1102, 1107 (9th Cir. 2004).

"Where a federal court has decided the earlier case, federal law controls the collateral estoppel analysis." McQuillion v. Schwarzenegger, 369 F.3d 1091, 1096 (9th Cir. 2004). Under federal law, "(1) the issue at stake must be identical to the one alleged in the prior litigation; (2) the issue must have been actually litigated [by the party against whom preclusion is asserted]; and (3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in the earlier action." See id. (alteration in original). Thus, "[u]nder collateral estoppel, once a court has decided an issue

---

[8] In light of this ruling, the Court does not reach defendants' additional arguments that Franklin and Reynoso are entitled to qualified immunity or that Walker is entitled to absolute witness immunity.

10

of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." Allen v. McCurry, 449 U.S. 90, 94 (1980). In particular, collateral estoppel principles may bar a § 1983 action as a result of issues litigated in prior criminal proceedings. See id. at 91, 105.

Here, the identical issue previously litigated by Lewis in the criminal action constitutes the basis of the instant action. As noted, Lewis argued in the criminal action that the government engaged in misconduct by instructing Long to falsify his testimony at Lewis' criminal trial and that, in the absence of such conduct, Lewis would have been acquitted. The same issue underlies all of Lewis's claims in the instant action. (See Compl. ¶ 15-16.) Lewis's argument that the issue presented in the criminal case is different from the issue presented in the instant case because "the issue here is the suppression of evidence from the jury, not [from] defense counsel," (see Opp. at 17), is unpersuasive.

Additionally, the issue of the government's asserted coercion of false testimony by Long was "actually litigated" by Lewis in the criminal action, and the court's determination of the issue was necessary to the judgment; the Ninth Circuit expressly affirmed the district court's denial of Lewis's motion in the criminal action on the ground that the record "does not suggest prosecutorial misconduct." See United States v. Lewis, 368 F.3d at 1107.

Lewis argues that collateral estoppel does not apply because defendants sued in their individual capacity are not in privity with the government and, thus, the criminal action and the instant civil action do not involve the same parties. Again, Lewis's argument is unpersuasive. The United States Supreme Court has held that a litigant who was not a party to the prior action may use collateral estoppel offensively "against the party who lost on the decided issue in the first case." See Allen, 449 U.S. at 95 (citation omitted).

Accordingly, the Court finds Lewis is collaterally estopped from bringing the instant action, because the issues raised in the instant action were previously litigated by Lewis and decided against him in his criminal case.[9] Consequently, the Court will GRANT

---

[9] In light of the above rulings, the Court does not reach defendants' other arguments in support of summary judgment.

defendants' motions for summary judgment for this additional reason as well.

## CONCLUSION

For the reasons set forth above,

1. Franklin's and Reynoso's motion for summary judgment is hereby GRANTED.

2. Walker's motion for summary judgment is hereby GRANTED.

**IT IS SO ORDERED.**

Dated: January 3, 2007

MAXINE M. CHESNEY
United States District Judge